IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Giro Joseph Maderazzo, II | ) | No. CV-08-560-PHX-FJM (LOA) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

This matter arises on Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (docket # 1) Respondents filed an Answer (docket # 14) to which Petitioner has replied (dockets # 19, 20).   The Court will deny Petitioner's request for an evidentiary hearing because this matter is suitable for resolution on the pleadings. *See* 28 U.S.C. § 2254(e)(2); *Schriro v. Landrigan*, 550 U.S. 465, 747 (2007); *Totten v. Merkle*, 137 F.3d 1172, 1176 (1998) (holding that "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.") (emphasis deleted).  The Court will also deny Petitioner's request for counsel (*see* docket # 20 at 9) because Petitioner has not shown that he is entitled to counsel in this proceeding.  *See* 18 U.S.C. § 3006A(a)(2)(B).  Based on review of the record, the Petition should be denied for the reasons set forth below.

## I.  Factual and Procedural Background

### A.  Charges, Trial and Sentencing

On September 4, 2003, Petitioner was indicted by a Maricopa County grand jury on the following counts: Count 1 - third degree burglary, a class 4 felony; Count 2 - criminal

damage, a class 5 felony; Counts 3 and 6 - theft, class 3 felonies; Count 4 - trafficking in stolen property in the second degree, a class 3 felony; and Count 5 - unlawful use of means of transportation, a class 5 felony. (Respondents' Exh. A at 1-3)  The State subsequently alleged that Petitioner had two prior felony convictions and committed the offenses while on felony release. (Respondents' Exh. B)  Pursuant to A.R.S. § 13-702.02, the indictment also alleged "multiple offenses not committed on the same occasion but consolidated for trial." (Respondents' Exh. C at 9)  Specifically, the State alleged that Petitioner committed Counts 1, 2, and 3 on August 8, 2003, and Counts 4, 5, and 6 on August 10, 2003.  (*Id.*)

Petitioner's case proceeded to trial before the Honorable Richard L. Nothwehr on February18, 2004. (Respondents' Exh. D at 11)  Petitioner testified and admitted that he had been convicted of a prior felony on March 3, 1998, in Maricopa County, CR-97-11702. (Respondents' Exh. Q at 122, 124)  Evidence at trial showed that Petitioner, an employee of Essco Electric ("Essco"), stole copper wire from Essco and sold it to Snowman Recycling ("Snowman") for over $ 4,600.  (docket # 1-2 at 54)   Following a three-day trial, a jury convicted Petitioner of all six counts. (Respondents' Exh. D at 11, 19-20)

At sentencing, the State presented evidence that Petitioner had two prior felony convictions. (Respondents' Exh. R at 143)  However, with the State's agreement, the court found that Petitioner had only one historical prior felony conviction. (Respondents' Exh. E at 143-44)  Pursuant to A.R.S. § 13-604(A), (B), the court sentenced Petitioner to six concurrent terms of imprisonment. (Respondents' Exh. E at 154-57, Exh. E at 22-23)  Specifically, the court imposed the following presumptive sentences on Counts 1, 2, 3 and 5: Count 1, third degree burglary, 4.5 years; Count 2, criminal damage, 2.25 years; Count 3, theft, 6.5 years; and Count 5, unlawful use of transportation, 2.25 years. (Respondents' Exh. R at 154-55; Exh. E at 22-23)  On Count 4, trafficking in stolen property, and Count 6, theft against Snowman, the court imposed aggravated sentences of nine years imprisonment on each count based on four aggravating factors: (1) pecuniary gain; (2) multiple victims; (3) taking advantage of an employer-employee relationship; and (4) lack of remorse. (Respondents' Exh. R at 155-56; Exh. E at 23)

1

**B.  Direct Appeal**

2       Petitioner timely appealed asserting that the court fundamentally erred and violated

3  the Sixth Amendment by imposing aggravated sentences on Counts 4 and 6 based on factual

4  findings that were neither found by the jury nor admitted by Petitioner.  (Respondents' Exh. F

5  at 44-61; docket # 1-2 at 28-52)  On August 9, 2005, the Arizona Court of Appeals affirmed

6  Petitioner's convictions and sentences.  (docket # 1-2 at 53-60)   Relying on *State v. Martinez*,

7  210 Ariz. 578, 115 P.3d 618 (Ariz. 2005) which holds that a single *Blakely*-exempt or *Blakely*-

8  compliant aggravating factor permits the imposition of an aggravated sentence, the appellate

9  court rejected Petitioner's Sixth Amendment claim because "the [aggravating] factor of multiple

10  victims was inherent in the jury's verdict."  (docket # 1-2 at 57-58)  The court explained that

11  the:

12              indictment included two separate counts for theft with a different
              victim in each count.  The jury convicted [Petitioner] on all counts.

13              Thus, the factor of multiple victims was inherent in the jury's
              verdict and the court's use of it did not violate *Blakely*.

14
(docket # 1-2 at 58)  The court further found that because one aggravating factor  was "inherent

15
in the jury's verdict," "the statutory maximum was elevated to the maximum aggravated

16
sentence" under Arizona law.  (docket # 1-2 at 58)  Thus, the trial court did not violate *Blakely*

17
by relying on the additional aggravating factors - pecuniary gain, employer-employee

18
relationship, and lack of remorse - to determine the length of Petitioner's aggravated sentences.

19
(docket # 1-2 at 58-59)  Petitioner did not seek review in the Arizona Supreme Court.  (docket

20
# 1 at 3)

21
**C.  Post-Conviction Proceedings**

22       On September 15, 2005, Petitioner filed a notice of post-conviction relief pursuant

23  to Ariz.R.Crim.P. 32.  (Respondents' Exh. I) On September 27, 2005, the court appointed

24  counsel to represent Petitioner.  (Respondents' Exh. J at 99-100)   On May 5, 2006, counsel

25  filed a Notice of Completion of Post-Conviction Review, advising the court that he could find

26  no claims to raise on post-conviction review and requesting additional time for Petitioner to file

27

28

1   a *pro per* petition.  (Respondents' Exhs. K, L at 103)  The court granted Petitioner additional

2   time to file his petition.

3          On June 22, 2006, Petitioner filed a *pro per* petition raising four claims:  (1)  defense

4   counsel was ineffective for failing to call Petitioner's wife, Rebecca Maderazzo ("Rebecca"),

5   and members of Essco's cleaning company as witnesses at trial; (2) defense counsel was

6   ineffective for failing to object to the State's motion *in limine* to preclude Petitioner's statements

7   to third parties; (3) defense counsel was ineffective for failing to object to witness Jeff

8   Silverberg's testimony as hearsay; and (4) defense counsel was ineffective for failing to argue

9   that witnesses Don Tapia and Tim Barber committed perjury.  (docket # 1-3 at 7-9)  Although

10  Petitioner challenged counsel's representation, he did not refer to his Sixth Amendment right

11  to effective assistance of counsel, cite to *Strickland v. Washington*, 466 U.S. 668 (1984), or cite

12  to other federal law.  (docket # 1-3 at 2-9)

13         The State responded, arguing that the petition for post-conviction relief should be

14  dismissed because Petitioner failed to comply with Ariz.R.Crim.P. 32.5, which requires

15  "defendants to support the allegations of their [PCR] petitions with affidavits, records, or

16  evidence."  (Respondents' Exh. M at 107-08)   On November 15, 2006, the trial court denied

17  relief on Petitioner's claim that defense counsel erred in failing to present members of Essco's

18  cleaning crew as witnesses because Petitioner failed to provide "information that would indicate

19  that [their testimony] would have changed the outcome of the case."  (Respondents' Exh. N at

20  110)  The court also denied relief on Petitioner's "claims that hearsay was improperly admitted

21  or that witness Tapia should have been precluded."  (*Id.*)  Based on the affidavit of Petitioner's

22  wife, Rebecca, the court found that a hearing was warranted on Petitioner's claim that defense

23  counsel erred by failing to call Rebecca as a witness. (*Id.*)

24         On December 15, 2006, the post-conviction court held an evidentiary hearing on

25  Petitioner's claim that counsel erred for failing to call his wife as a witness.  (Respondents'

26  Exhs. O, S at 160-186)  On December 29, 2006, the court denied relief on that claim.  The court

27  found that Petitioner failed to demonstrate that defense counsel's performance was deficient or

28

that there was a reasonable probability that his wife's testimony would have changed the outcome of the trial.  (docket # 1-3 at 88-91)

On February 26, 2007, Petitioner filed a petition for review in the Arizona Court of Appeals.  (docket # 1-3 at 92-98)  Petitioner argued that the post-conviction court erred in denying his claim that counsel was ineffective for failing to investigate and present Rebecca as a witness.  Petitioner also argued that the post-conviction court erred in failing to hold an evidentiary hearing on his claims that defense counsel was ineffective for failing to: (1) investigate the testimony of the cleaning crew; (2) argue that witness Silverberg's testimony was inadmissible hearsay; and (3) impeach witness Tapia's testimony as perjury.

On November 9, 2007, the Arizona Court of Appeals denied review.  (docket # 1-3 at 99)  Petitioner did not seek review in the Arizona Supreme Court.  (docket #  1 at 5)

### D. Federal Petition for Writ of Habeas Corpus

Thereafter, Petitioner filed the instant Petition for Writ of Habeas Corpus raising the following claims: Ground One: Petitioner's aggravated sentences imposed on Counts 4 and 6 violate the Sixth Amendment because the aggravating factors were not submitted to a jury and proved beyond a reasonable doubt; Ground Two: (a) trial counsel was ineffective for failing to investigate and call his wife and the Essco cleaning crew as witnesses; (b) trial counsel was ineffective for failing to object to Petitioner's aggravated sentences; and (c) the prosecutor engaged in misconduct by offering perjured testimony against Petitioner.  (docket # 1 at 6-7)

Respondents concede that the Petition is timely under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), thus, the Court will not address this issue further.  28 U.S.C. § 2254(d)(1); (docket # 14 at 7-9)  Respondents argue that all of Petitioner's claims are procedurally defaulted and barred from habeas corpus review.  Respondents alternatively argue that Petitioner's claims lack merit.  Petitioner disputes these assertions.

## II.  Exhaustion and Procedural Default

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available

state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). Contrary to Respondents' assertion, in Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *See Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)); *Swoopes*, 196 F.3d at 1010 (stating that "Arizona has declared that its complete round [of appellate review] does not include discretionary review before the Arizona Supreme Court.")

To fairly present a claim, a habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee,"

such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction

action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

**A. Application of Law to Petitioner's Claims**

**1. Ground One - Aggravated Sentences**

In Ground One, Petitioner alleges that his Sixth and Fourteenth Amendment rights were violated because he was sentenced in excess of the statutory maximum based on factual findings made by the judge, not a jury. (docket # 1 at 6) Respondents assert that this claim is procedurally barred because Petitioner did not raise a Sixth Amendment challenge at sentencing and because he did not present this claim to the Arizona Supreme Court. As previously discussed, in order to satisfy the exhaustion requirement, Petitioner was not required to present

1   his claims to the Arizona Supreme Court. *See* Section II, *supra*. Thus, the Court will consider

2   whether Petitioner's failure to raise his *Blakely* claim to the trial court at sentencing renders that

3   claim unexhausted.

4          Although Petitioner argued on direct appeal that his Sixth Amendment rights were

5   violated because the sentences imposed on Counts 4 and 6 were based on findings made by the

6   judge rather than the jury, he did not object to his sentence on Sixth Amendment grounds at the

7   time of sentencing. (Respondents' Exh. R at 125-28)  Petitioner argues that his failure to raise

8   a Sixth Amendment challenge at sentencing should be excused because his claim is based on

9   *Blakely v. Washington*, (2004), which was decided after Petitioner was sentenced, but while his

10  direct appeal was pending.

11          Respondents argue that Petitioner's Sixth Amendment claim was available to him

12  at sentencing, because the Supreme Court's decision in *Blakely* was based on its prior decisions

13  in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), both

14  of which were decided before Petitioner was sentenced on March 19, 2004.  Respondents

15  further argue, that although *Blakely* applies retroactively to cases pending on direct appeal,

16  Petitioner was still required to make a timely objection in the trial court to properly exhaust his

17  *Blakely* claim.  (docket # 14 at 15)

18          The Court need not resolve this issue, under the authority of 18 U.S.C. § 2254(b)(2),

19  which allows the court to deny a petition on its merits, even if the applicant has not exhausted

20  his remedies in state court.  As discussed in Section III.B. *infra*, Petitioner's *Blakely* claim lacks

21  merit.

22

23          **2.   Ground 2(a): Ineffective Assistance of Counsel**

24          In Ground 2(a), Petitioner argues that he received ineffective assistance of counsel

25  in violation of the Sixth and Fourteenth Amendments based on counsel's failure "to present

26  material witnesses that had exculpatory evidence."  (docket # 1 at 7)  Respondents assert that

27

28

1   this claim is unexhausted and procedurally barred, because Petitioner did not fairly present

2   Ground 2(a) as a federal claim to the Arizona courts.[1]   (docket # 14 at 17)

3               The Court agrees.   Petitioner's failure to present a federal claim of ineffective

4   assistance of counsel to the state courts renders that claim unexhausted.   A federal claim is not

5   exhausted by presentation of the same factual basis to the state courts on state law grounds.

6   *Shumway*, 223 F.3d at 987-88.   On post-conviction review, Petitioner argued that trial counsel

7   erred by failing to investigate and present his wife and members of the Essco cleaning company

8   as witnesses.   (docket # 1-3 at 7-8)   The petition for post-conviction relief, however, did not

9   alert the trial court that Petitioner was raising a Sixth Amendment claim of ineffective assistance

10  of counsel.   (*Id.*)   Even if the basis of the federal claim is "self-evident" or would be decided

11  "on the same consideration" under state or federal law, the petitioner must make the federal

12  nature of the claims "explicit either by citing federal law or the decision of the federal courts.

13  . . ."   *Lyons*, 232 F.3d at 668.   *See also, Baldwin*, 541 U.S. at 33 (finding that petitioner failed

14  to fairly present a federal claim where the petition did not "explicitly say that the words

15  'ineffective assistance of appellate counsel' refer to a federal claim.").   "In short, the petitioner

16  must have either referenced specific provisions of the federal constitution or statutes or cited

17  to federal case law."   *Lyons*, 232 F.2d at 670.   Petitioner's petition for post-conviction relief did

18  not cite the U.S. Constitution, federal statutes or case law, and thus failed to alert the state court

19  that Petitioner was raising a federal claim.   *See Galvan v. Alaska Dep't. of Corrections*, 397

20  F.3d 1198, 1201-04 (9th Cir. 2005) (petitioner failed to fairly present a federal claim of

21  ineffective assistance, even though she cited a federal case, where the relevant state court

22  petition did "not mention the Sixth Amendment to the United States Constitution.").

23  Petitioner's passing reference to the "Sixth Amendment" in his Reply brief, was not sufficient

24

25  _____

26  [1] Respondents also assert that Petitioner's claim of ineffective assistance asserted in
    Ground 2(a) is unexhausted because Petitioner did not present that claim to the Arizona

27  Supreme Court.   As previously discussed in Section II, *supra*, in order to satisfy the exhaustion
    requirement, Petitioner was not required to present his claims to the Arizona Supreme Court.

28

to fairly present a federal claim.  (docket # 1-3 at 70); *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (holding that "exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory.").

Because Petitioner did not present Ground 2(a) to the state courts as a federal claim, that claim is technically exhausted and procedurally defaulted because he cannot now return to state court to present this claim.  The "deadlines" for seeking post-conviction review in the state court have "long passed."  *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989) (affirming the district court's dismissal of a habeas corpus petition because petition lacked a "currently available state remedy at the time of the federal petition."); Ariz.R.Crim.P. 32.4 (providing that a notice of post-conviction relief "must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later.") Additionally, Petitioner is precluded from raising this claim in a second or successive Rule 32 petition because he could have raised it in his previous Rule 32 petition. Ariz.R.Crim.P. 32.2(a)(3)(establishing that a defendant "shall be precluded from relief under this rule based on any ground" that has been waived "in any previous collateral proceeding.")

### 3.  Ground 2(b) - Ineffective Assistance of Counsel

In Ground 2(b), Petitioner argues that counsel was "ineffective at sentencing" for failing "to object to an aggravated sentence imposed by the trial judge on factors not found by the jury."  (docket # 1 at 7)

Respondents assert that this claims is unexhausted and procedurally barred because Petitioner never presented this claim to any Arizona court.  The Court agrees.  On post-conviction review, Petitioner raised four separate claims based on defense counsel's following errors: (1) failure to call Rebecca and "the cleaning company" as witnesses; (2) failure to object to the State's motion to preclude Petitioner's statements to third parties; (3) failure to object to the "hearsay testimony" of witness Silverberg; and (4) failure to argue that witnesses Tapia and Barber committed perjury.  (docket # 1-3 at 7-8)  However, none of these claims was based on

1    federal law.   Additionally, Petitioner did not challenge counsel's failure to object to the
2    aggravated sentence at all.  (docket # 1-3 at 7-8)

3            Likewise, on appeal of the denial of his petition for post-conviction relief, Petitioner
4    did not challenge counsel's failure to object to his aggravated sentences.  (docket # 1-3 at 92-95)
5    Rather, he argued that the trial court erred by denying his claim that counsel erred for failing
6    to call Rebecca as a witness.  (docket # 1-3 at 94)  Petitioner also argued that the trial erred by
7    failing to hold an evidentiary hearing on Petitioner's claims that counsel failed to: (1)
8    investigate the cleaning crew's testimony; (2) object to Silverberg's testimony as hearsay; and
9    (3) impeach Tapia's testimony as perjury.  (docket # 1-3 at 93-96)

10           Because Petitioner failed to present Ground 2(b) to the Arizona courts, that claim
11   is technically exhausted and procedurally barred.  Petitioner cannot now return to state court to
12   properly exhaust Ground 2(b).  *See* Ariz.R.Crim.P. 32.2, 32.4(a) and Section II.A.2, *supra.*

### 4. Ground 2(c) - Prosecutorial Misconduct

15           In Ground 2(c), Petitioner argues that his Fifth and Fourteenth Amendment rights
16   were violated by the "[p]rosecutor knowingly using perjured testimony to obtain a conviction.
17   . . ."  (docket # 1 at 7)   Respondents assert that this claim is unexhausted and procedurally
18   barred because Petitioner never presented this claim to the Arizona courts.

19           The Court agrees.  The record reflects that Petitioner never presented a claim of
20   prosecutorial misconduct to the Arizona courts.  (Respondents' Exh. F; docket # 1-3 at 2-9)
21   Although Petitioner challenged counsel's failure to object to the alleged perjured testimony, he
22   never asserted that the prosecutor suborned perjury. (docket # 1-3 at 2-9)  Because Petitioner
23   did not fairly present Ground 2(c) to the state courts, that claim is technically exhausted and
24   procedurally defaulted because he cannot now return to state court to present this claim.  The
25   "deadlines" for seeking post-conviction review in the state court have "long passed."  *White v.*
26   *Lewis*, 874 F.2d 599, 602 (9th Cir. 1989) (affirming the district court's dismissal of a habeas
27   corpus petition because petitioner lacked a "currently available state remedy at the time of the
28   federal petition."); Ariz.R.Crim.P. 32.4 (providing that a notice of post-conviction relief "must

be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later.") Additionally, Petitioner is precluded from raising this claim in a second or successive Rule 32 petition because he could have raised it in his previous Rule 32 petition.   Ariz.R.Crim.P. 32.2(a)(3)(establishing that a defendant "shall be precluded from relief under this rule based on any ground" that has been waived "in any previous collateral proceeding.")

## B.  Cause and Prejudice/Fundamental Miscarriage of Justice

Because Petitioner's claims raised in Grounds 2 are procedurally defaulted, federal review is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *House v. Bell*, 547U.S. 518, 535-36 (2006); *Bradshaw v. Richey*, 546 U.S. 74 (2005); *Moorman v. Schriro*, 426 F.3d 1044, 1058 (9th Cir. 2005) (stating that "[a] prisoner who fails to comply with state procedures cannot receive federal habeas corpus review of a defaulted claim unless the petitioner can demonstrate either cause for the default and resulting prejudice, or that failure to review the claims would result in a fundamental miscarriage of justice.")  To establish cause, a petitioner must show that some objective external factor impeded his efforts to comply with the state's procedural rules.  *Id.*  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004).  To establish prejudice, a petitioner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner has not established cause for his procedural default.  Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present his second ground for relief to the Arizona  courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d

1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)

Likewise, Petitioner has not satisfied the "fundamental miscarriage of justice" standard because he has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence. . . . Given the rarity of [reliable] evidence [of actual innocence], in virtually every case, the allegation of actual innocence has been summarily rejected.") (internal quotation marks and citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (reaffirming that the "fundamental miscarriage of justice" standard is a "narrow exception" that only applies where "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense.") (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Because Petitioner's claims asserted in Ground 2 are procedurally defaulted and he fails to establish a basis to excuse his default, federal habeas corpus review of those claims is barred. The Court, therefore, need not reach the merits of Ground 2. *Dretke v. Haley*, 541 U.S. at 393-94. In an abundance of caution, the Court will consider the merits of Petitioner's claims of ineffective assistance of counsel raised in Ground 2(a) because Petitioner presented a state law challenge to counsel's representation based on the same facts as those in 2(a).

## III. Analysis

### A. Standard of Review

This Court's analysis of the merits of Petitioner's claims is constrained by the applicable standard of review. A state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003). Specifically, the AEDPA's "high burden" requires a federal habeas petitioner to prove that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Uttecht v. Brown*, 551 U.S. 1, 2007 (2007); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (stating that "federal habeas relief may be granted" only if the state court's decision "was contrary to or involved an unreasonable application of this Court's applicable holdings.").

Under the "contrary to" clause of § 2254(d), a federal habeas court may not issue a writ, unless the state court: (1) applied a rule of law "that contradicts the governing law set forth in [Supreme Court] cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). In other words, a petitioner may be entitled to habeas corpus relief if he establishes that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. *Williams*, 529 U.S. at 405; *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

A state court decision is reviewed under the "unreasonable application of" standard where the state court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under this standard, "[i]t is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the state court decision "must be objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76; *Rompilla*, 545 U.S. at 380. An *unreasonable* application is different from an incorrect application of law. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court will consider Petitioner's *Blakely* claim in view of this standard.

/ / /

/ / /

/ / /

- 15 -

**B.  Ground One - Sixth Amendment/*Blakely* Claim**

In his first ground for relief, Petitioner argues that his aggravated sentences imposed on Counts 4 and 6 violate the Sixth Amendment because aggravating factors were not found by a jury beyond a reasonable doubt.  (docket # 1 at 6)

Supreme Court case law instructs that the Sixth Amendment's jury-trial guarantee proscribes the imposition of a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005).  Since it first articulated this rule, the Supreme Court has retained an exception for prior convictions.[2]  *Id.*; *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004); *United States v. Maria-Gonzalez*, 268 F.3d 664, 670 (9th Cir. 2001) (holding that prior aggravated felony conviction did not constitute an element of the offense where base sentence for illegally reentering the United States following deportation is enhanced if deportation was subsequent to conviction for aggravated felony).

In *Blakely*, the Supreme Court clarified that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. . . .In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04 (emphasis in original).  The Court concluded that before a trial court can impose a sentence above the statutory maximum, a jury must find beyond a reasonable doubt, or defendant must admit, all facts "*legally essential* to the punishment."  *Blakely*, 542 U.S. at 313 (emphasis added).

---

[2] In this case, because Petitioner admitted a prior conviction at trial, he was sentenced in accordance with A.R.S. § 13-604(A)-(B).  (Respondents' Exh. Q at 122-23; Exh. T at 187) Petitioner does not challenge the trial court's reliance on his admitted-prior felony conviction in selecting the appropriate sentencing statute.

Here, Petitioner challenges the aggravated sentences imposed on his convictions on Counts 4 and 6, trafficking in stolen property and theft. (docket # 1) On these two counts, the court imposed aggravated terms of 9 years' imprisonment based on the following aggravating factors: (1) pecuniary gain; (2) multiple victims; (3) taking advantage of employer-employee relationship; and (4) lack of remorse. (Respondents' Exh. R at 155-156) On direct review, Petitioner challenged his aggravated sentences on the ground that the judge, rather then a jury, found the aggravating factors in violation of the Sixth Amendment as discussed in *Blakely*. The state court rejected Petitioner's claim and affirmed Petitioner's aggravated sentences because (1) "the [aggravating] factor of multiple victims was inherent in the jury's verdict" on Counts 4 and 6; and (2) once the trial court found one *Blakely*-compliant aggravating factor, "the statutory maximum was elevated to the maximum aggravated sentence" of 13 years, and "the trial court then had the discretion to find and consider all of the remaining aggravating factors regardless of whether they were found by the jury or admitted by [Petitioner]" in imposing a sentence within the enhanced sentencing range. (docket # 1-2 at 58-59, citing *State v. Martinez*, 210 Ariz. 578, 585, 115 P.2d 618 (Ariz. 2005); Respondents' Exh. T at 187) The appellate court concluded that the trial court did not violate Petitioner's Sixth Amendment right by imposing aggravated sentences on Counts 4 and 6. (docket # 1-2 at 58-59)

As discussed below, the state court's decision that Petitioner's aggravated sentences did not violate the Sixth Amendment was neither an unreasonable application of, nor contrary to, the *Blakely* decision. In *State v. Martinez II*, 210 Ariz. 578, 583, 115 P.3d 618, 623 (Ariz.2005), the Arizona Supreme Court considered the impact of *Blakely* on Arizona's sentencing scheme. In Arizona, the statutory maximum sentence in a case where no *Blakely*-compliant or *Blakely*-exempt aggravating factors are present is the presumptive term. *Martinez*, 210 Ariz. at 583, 115 P.3d at 623; *State v. Price*, 217 Ariz. 182, 184-85, 171 P.3d 1223, 1225-26 (2007). However, because an Arizona defendant may receive an aggravated sentence based on one aggravating factor, A.R.S. § 13-702(B), a single *Blakely*-compliant or *Blakely*-exempt aggravating factor establishes the facts "legally essential" to punishment. Once

such a factor is established, the trial court is free to consider additional facts to determine where to sentence a defendant within the aggravated range. *Martinez*, 210 Ariz. at 584-585, 115 P.3d at 625; *Price*, 217 Ariz. 182, 185, 171 P.3d at 1226 (stating that "[i]f there is one *Apprendi*-compliant aggravating factor, 'a defendant is exposed to a sentencing range that extends to the maximum punishment available under section 13-702.') (citation omitted).

In *Stokes v. Schriro*, 465 F.3d 397, 402-03 (9th Cir. 2006), the Ninth Circuit held that "the Arizona state courts' interpretation of these [sentencing] provisions does not contradict clearly established federal law [*Apprendi/Blakely*].  A statutory maximum need not be defined by every one of the facts found at trial, so long as the defendant is not exposed to a greater punishment than that authorized solely by those facts (or the fact of a prior conviction). . . ." *Id.* at 402-03 (internal quotations and citations omitted).

Consistent with *Stokes*, several district courts within the Ninth Circuit have concluded that "once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute." *Jones v. Schriro*, No. CV-05-3720-PHX-JAT (DKD), 2006 WL 1794765, * 2-3 (D.Ariz., June 27, 2006).  (quoting *State v. Martinez*, 210 Ariz. 578, 585, 115 P.2d 618 (2005)).  In *Jones*, the court found that rule of *Blakely* was satisfied once petitioner admitted a single aggravating factor.  *Id.* at * 3. Specifically, petitioner in *Jones* admitted - in the written plea agreement, at the change of plea hearing, or at sentencing - to three different aggravating factors.  *Id.*  The *Jones* court found that petitioner's admission of any one of those aggravating factors authorized the trial court to impose a sentence anywhere within the statutory range.  *Id.*

In *Garcia v. Schriro*, No. 06-855-PHX-DGC (DKD), 2006 WL 3292473 (D.Ariz., Nov. 9, 2006), the district court held that petitioner's aggravated sentence did not violate *Blakely*.  The court found that the "trial court properly considered petitioner's prior convictions as an aggravating circumstance that increased the maximum allowable sentence under *Blakely*. Once the new maximum was established, the court was free to consider the other aggravating

circumstances of parole violation and pecuniary gain in deciding where to sentence petitioner within the new maximum range." *Id.* at * 2.   In so finding, the court explained that Petitioner's admission of pecuniary gain in the plea agreement was sufficient to establish an aggravating factor in accordance with *Blakely*.  *Id.* at * 3.   *See also Nino v. Flannigan*, No. 2:04cv2298-JWS (CRP), 2007 WL 1412493, * 4 (D.Ariz., May 14, 2007) (finding that because "one *Blakely* exempt factor supports the aggravated sentence, consideration of other factors when imposing a sentence does not violate Petitioner's Fifth and Sixth Amendment rights established in *Blakely*.)

Similarly, in this case, a *Blakely*-compliant aggravating factor exposed Petitioner to the aggravated term of imprisonment. Specifically, the aggravating factor of multiple victims was inherent in the jury's verdict. The indictment charged Petitioner with two counts of theft against different victims, Essco and Snowman.  (Respondents' Exh. A) The jury found Petitioner guilty of all counts charged in the indictment. (Respondents' Exh. D)  Thus, the jury necessarily found that there were multiple victims.  The trial court also found other aggravating factors - pecuniary gain, exploiting an employer-employee relationship, and lack of remorse. (Respondents' Exh. R at 155-56)  However, the multiple victims aggravating factor alone exposed Petitioner to the fully aggravated term.[3] *Blakely*, 542 U.S. at 303-04. Therefore, Petitioner's aggravated sentence comports with the Sixth Amendment.

Based on the foregoing, the state court's finding that Petitioner's aggravated sentences did not violate the Sixth Amendment is neither contrary to, nor an unreasonable application of the Supreme Court's *Apprendi/Blakely* jurisprudence.  Contrary to Petitioner's assertion, the trial court properly considered the fact that Counts 4 and 6 involved multiple victims as an aggravating factor that increased the maximum allowable sentence under *Blakely*.

---

[3]   Pursuant to A.R.S. § 13-604(B), "[t]he presumptive term may be mitigated or aggravated within the range prescribed under this subsection pursuant to the terms of § 13-702, subsections B, C, and D."  *Id.*  The Arizona Court of Appeals found that the "multiple victims" aggravating factor satisfied the "catch-all" provisions of A.R.S. § 13-702(C)(21) (Supp. 2004). (docket # 1-2 at 58, n. 2)

*Stokes*, 465 F.3d at 402-03.  Once the new maximum was established, the trial court was authorized to sentence Petitioner anywhere within the new sentencing range.

Moreover, even if a *Blakely*-compliant aggravating factor was not present, any resulting error is harmless. *See Washington v. Recuenco*, 548 U.S. 212 (2006).  On federal habeas corpus review, the applicable harmless error standard is whether the error had a "substantial and injurious effect" upon the sentence. *Brecht v. Abrahamson*, 507 U.S. 616, 623 (1993).  In this case, no reasonable juror could fail to find beyond a reasonable doubt either of the two additional aggravating factors which the trial court considered in imposing an aggravated sentence.  The evidence confirmed that Petitioner received over $4,600 for the copper wire and that Petitioner used his employment at Essco to arrange the sale of copper wire to Snowman.  (Respondents' Exh. F at 38-40; docket # 1-3 at 43-44)  In view of the foregoing, even if the trial court violated *Blakely*, the error did not have a "substantial and injurious effect" upon the sentence and, therefore, the error was harmless. *Brecht,* 507 U.S. at 623.

### C.  Ground 2(a) - Ineffective Assistance of Counsel

In Ground 2(a), Petitioner argues that trial counsel was ineffective for failing to present several witnesses who could have offered "exculpatory evidence."   (docket #  1 at 7)  Petitioner contends that his wife, Rebecca, and the members of the Essco cleaning crew should have been called as defense witnesses.

Although Petitioner did not present a *federal* claim of ineffective assistance to the state court on post-conviction review, he raised these same issues on the basis of state law.  After conducting an evidentiary hearing on Petitioner's claim regarding his wife's testimony, the post-conviction court denied relief on all of Petitioner's claims.  (Respondents' Exh. N at 110; docket # 1-3 at 88-91)  The appellate court summarily affirmed this ruling.  (docket # 1-3 at 99)   Accordingly, the last reasoned decision of the state courts is the trial court's decision on post-conviction review.  (docket # 1-3 at 88-91)  Even though the state court did not cite United States Supreme Court authority, on habeas review this court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law.

*Early v. Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

### 1. Controlling Supreme Court Precedent

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at 691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed directly to the prejudice prong.  *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice solely from counsel's allegedly deficient performance.  *Jackson*, 211 F.3d at 1155.

### 2.  Failure to Investigate or Call Petitioner's Wife as a Witness

Petitioner contends that counsel was ineffective for failing to investigate or call his wife, Rebecca, as a witness.  Petitioner argues that Rebecca would have testified that she saw Petitioner mail an envelope of cash to his employer, Mr. Tapia, in support of Petitioner's defense theory that he sold the copper wire to Snowman at Mr. Tapia's request.  During the post-conviction hearing, Rebecca testified that she wanted to testify on Petitioner's behalf at trial and that she conveyed that desire to defense counsel by attending a pre-trial meeting in his office and telephoning several times.  (Respondents' Exh. S at 166-67)  Rebecca testified that counsel did not return her calls.  (Respondents' Exh. S at 166-67)  Rebecca stated that, if she had been called as a witness, she would have testified that: (1) on Sunday August 10, 2003, the day Petitioner sold the copper wire to Snowman, he left home for two hours and returned with "money in his hand" (Respondents' Exh. S at 167); (2) Petitioner then put the money in an envelope addressed to Don Tapia, the CEO of Essco Electric (Respondents' Exh. S at 168); (3) when Rebecca urged Petitioner not to "send money by postal mail," he responded, "I was told to do it this way" (*Id*. at 168); and (4) Rebecca saw Petitioner put the stamped envelope addressed to Tapia in a mailbox near Chaparral and Hayden.  (*Id*.)  Rebecca would have also testified that Petitioner told her the money "was for work," and that he had been "told to scrap some wire or materials. . . ."  (*Id*.)

Petitioner's defense counsel, Christopher Flores, also testified at the post-conviction hearing.  (Respondents' Exh. S at 169-76)  He testified that, although he remembered meeting with Petitioner at his office before trial, he could not recall what transpired at that meeting. (Respondents' Exh. S at 170)  Flores also remembered that Rebecca was in the lobby of his

office when he met with Petitioner.  (Respondents' Exh. S at 169-70, 175)  Flores further testified that, although he did not recall whether the issue was discussed, he would have presented Rebecca's testimony if Petitioner or Rebecca had ever advised him of the substance of her testimony or if Petitioner had indicated that he wanted Rebecca to testify in his defense. (Respondents' Exh. S at 170-72)  Flores stated that, in view of the evidence against Petitioner, if anyone "would have been able to back up [Petitioner's] position that he sent a large amount of money in a mailbox to his employer, [Flores] would have had that person get on the stand and say that's what they saw. . . .."  (Respondents' Exh. S at 173)  Flores testified that he did not present Rebecca as a witness, because Petitioner never told him that she could corroborate his testimony.  (Respondents' Exh. S at 174)

Petitioner's father, Michael Maderazzo ("Michael"), also testified at the evidentiary hearing.  Michael testified that Rebecca had told him that she had requested that Flores present her as a defense witness, but Flores never talked with Rebecca.  (Respondents' Exh. S at 178-79)  Michael admitted that he had no personal knowledge of whether Rebecca had actually asked Flores to present her testimony.  He also admitted he had no personal knowledge of any "interaction that may have taken place between Mr. Flores and [Rebecca] prior to trial . . . ." (Respondents' Exh. S at 179)

Petitioner did not testify at the evidentiary hearing, but presented closing argument on his own behalf.  (Respondents' Exh. S at 181)  Petitioner argued that his convictions should be vacated because defense counsel did not call Rebecca as a witness.  Petitioner argued that during pre-trial conversations with counsel, he was "very clear" that Rebecca was willing to testify at trial.  (Respondents' Exh. S at 181-82)  Petitioner argued that Rebecca's testimony that she saw Petitioner mail an envelope of money to Tapia would have changed the outcome of "a few of the charges."  (Respondents' Exh. S at 181)

The state court's denial of Petitioner's claim of ineffective assistance based on counsel's failure to investigate and call Petitioner's wife, Rebecca, as a witness is neither contrary to, nor an unreasonable application of, federal law and does not rest on an unreasonable

determination of the facts.  28 U.S.C. § 2254.   As the post-conviction court found, there was abundant evidence of Petitioner's guilt.   The evidence at trial established that Petitioner was employed by Essco, an electrical contracting company.  Petitioner worked in "inside sales" and did not have any responsibility for "scrapping" materials.  (docket # 1-3 at 51, 58)  Petitioner was not authorized or trained to drive trucks or forklifts for Essco.  (docket # 1-3 at 45, 50-51, 57-58; Exh. F at 38)  On Friday, August 8, 2003, Petitioner returned to work after hours and used his pass code to enter the building.  (Respondents' Exh. F at 39-40)  During the night, someone operated a forklift, causing extensive damage to the interior of the warehouse and loaded spools of copper electrical wire onto a flatbed truck.  (Respondents' Exh. F at 35-36)

On Saturday morning, two Essco employers saw the damage and the truck loaded with copper wire outside the warehouse door.  (Respondents' Exh. F at 35)  Evidence showed that Petitioner had made arrangements to deliver wire to Snowman Recycling that Saturday morning.  (Respondents' Exh. F at 33-34)  Petitioner had to call Snowman to postpone the delivery because workers were at the building.  (Respondents' Exh. F at 33)  On Saturday, no one could locate the keys to the flatbed truck, because the keys were not in the normal location. (Respondents' Exh. F at 36)

On Sunday morning, Petitioner drove the truck to Snowman Recycling and sold the wire for over $4,600 in cash.  (Respondents' Exh. F at 33; docket # 1-3 at 43-44)  On Monday morning, Petitioner arrived at work and learned of the investigation into the damage and the stolen wire.   Petitioner left Essco and later telephoned a coworker, Jeff Silverberg, and apologized for having messed up and stated that he had been having money problems.  (docket # 1-3 at 35-36)  Later, Donald Tapia, Essco's CEO, called Petitioner.  (docket # 1-3 at 140) Petitioner pleaded that Essco not prosecute if he could make restitution for the losses he caused. (docket # 1-3 at 38, 44-45)

Petitioner claimed that he was directed by Essco's CEO, Tapia, to commit the foregoing actions.  (Respondents' Exh. F at 41)  Petitioner claimed that, after he sold the wire, he mailed the cash to Tapia at his direction.  (Respondents' Exh. F at 41)  Petitioner argued that

counsel was ineffective for failing to present his wife as a witness because her testimony, that she saw Petitioner place the envelope of cash in the mail, would have corroborated his version of the events.

Even assuming that counsel was deficient for failing to investigate and present Petitioner's wife, Rebecca, as a witness, the state court reasonably applied *Strickland's* prejudice prong when it determined that Petitioner failed to establish that counsel's alleged deficient performance prejudiced him. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative . . . . In addition, for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citations omitted). The post-conviction court rejected Petitioner's claim that there was a reasonable likelihood that Rebecca's testimony would have changed the outcome of trial based on its determination that the "evidence was overwhelmingly against [Petitioner] and "[t]he State's presentation of the evidence with multiple witnesses tying the testimony securely together establishes that [Petitioner] did commit all of the crimes." (docket # 1-3 at 91) The trial court properly weighed the strength of the State's evidence and found that "no reasonable juror would have found [Petitioner's] testimony credible," and no reasonable juror would believe Rebecca's testimony in support of Petitioner's claims. (docket # 1-3 at 91) The trial court reasonably applied the *Strickland* prejudice prong by assessing the likelihood that Rebecca's testimony would not have changed the outcome of trial, in view of the strength of the State's case. *See Luna v. Cambra*, 306 F.3d 954, 966 (9th Cir. 2002) (stating that evaluation of *Strickland* prejudice must be considered in light of the strength of the government's case).

Petitioner fails to demonstrate that counsel's failure to present Rebecca's testimony prejudiced him. As set forth above, the State offered overwhelming evidence of Petitioner's guilt presented by multiple witnesses whose testimony consistently indicated that Petitioner committed the crimes. The strength of the State's case defeats Petitioner's claim of prejudice.

*See United Sates v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998).  Petitioner has not shown that there is a reasonable likelihood that had Rebecca testified, the outcome of his trial would have been different.  Petitioner's speculation that Rebecca's testimony would have likely changed the outcome of trial is insufficient to establish prejudice. *Hopkinson v. Shillinger*, 866 F.2d 1185, 1211-12 (10th Cir. 1989).

In addition to failing to establish that the state court's decision was based on an unreasonable application of *Strickland*, Petitioner has not shown that the state court's decision was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2). Petitioner's claim of ineffective assistance is based on his defense theory that Essco's CEO, Tapia, directed him to steal copper wire from his own company and sell it as scrap to a recycling company.  Petitioner claimed that his wife would have testified in support of that theory.  To believe Petitioner, the jury would have had to believe that the CEO of Essco reached out to Petitioner, who had only worked for Essco for six months, to steal and re-sell copper wire from his own company and them mail him the cash proceeds. (Respondents' Exh. R at 129-30)  As the trial court noted, Petitioner's defense was not credible for several reasons.  First, Petitioner worked in inside sales and did not work with scrap materials.  (docket # 1-3 at 51-52) Additionally, the CEO of Essco knew that Essco could make more money by selling copper wire as "new materials," rather than as "scrap materials."  (docket # 1-3 at 62)    Second, Petitioner apologized to a coworker for committing the crime, and urged that Essco not prosecute him if he made restitution for the losses he caused.  (docket # 1-3 at 62)   In view of the evidence against Petitioner, including his own admission of guilt, the trial court reasonably concluded that there was no reasonable probability that Rebecca's testimony that she saw Petitioner mail an envelope of cash to Tapia would have changed the outcome of trial.

### 3.  Ineffective Assistance - Cleaning Crew

In Ground 2(b), Petitioner alleges that defense counsel was ineffective for failing to investigate and present testimony from Essco's cleaning crew.  Petitioner raised this claim

on post-conviction review.  The trial court denied an evidentiary hearing, and relief, on this issue because Petitioner's allegations were speculative.  (Respondents' Exh. N)

The trial court properly denied Petitioner's request for an evidentiary hearing and relief on this issue because Petitioner did not present any information indicating how the testimony of Essco's cleaning crew would have changed the outcome of trial.  (Respondents' Exh. N at 110)  Petitioner has never identified a specific member of Essco's cleaning crew who would have testified, the nature of that person's testimony, or how that testimony would have changed the outcome of trial.  *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (rejecting ineffective assistance of counsel claim based on counsel's failure to call out-of-state witnesses, because petitioner "offers no indication of what these witnesses would have testified to, or how their testimony might have changed the outcome of the hearing.")  Petitioner has not presented an affidavit of any member of Essco's cleaning crew setting forth that person's testimony.  Petitioner's conclusory statement that the testimony of Essco's cleaning crew would have changed the outcome of trial, is not sufficient to support a claim of ineffective assistance.  *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim of ineffective assistance because petitioner offered no evidence this [alleged alibi] witness would have provided helpful testimony for the defense - i.e., [petitioner] has not presented an affidavit from this alleged witness.").

Additionally, the state court properly rejected as speculative and unsupported Petitioner's contention that members of Essco's cleaning crew were "present at Essco during the same time that the State wishes this Court to believe [that Petitioner] single-handedly loaded the wire onto the truck."  (docket # 1-3 at 72)  Defense counsel has a "duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This includes a duty to investigate the defendant's 'most important defense,' . . . and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence on the verdict . . . ." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (citations

1    omitted).  Petitioner has not shown that counsel had any reason to believe that members of

2    Essco's cleaning crew would confirm Petitioner's contention that he did not enter Essco's

3    warehouse and load copper wire on a truck.  Additionally, this theory was inconsistent with

4    Petitioner's defense that Tapia had directed him to steal and re-sell the copper wire.  (docket #

5    1-3 at 89)  Thus, any testimony by the cleaning crew that they never saw Petitioner load Essco's

6    truck was inconsistent with Petitioner's admission that he did take and re-sell Essco's property,

7    purportedly, at Tapia's request.  Finally, in view of the overwhelming evidence in support of

8    Petitioner's guilt, Petitioner has not shown that there is a reasonable likelihood that the outcome

9    of trial would have been different had members of Essco's cleaning crew testified.  Moreover,

10   Petitioner has not offered any evidence indicating that any member of Essco's cleaning crew

11   would have testified at trial.  *See United States v. Hardin*, 846 F.2d 1229, 1231-32 (9th Cir.

12   1988) (rejecting claim of ineffective assistance based on counsels' failure to call a witness who

13   would have taken responsibility for a gun found in defendant's possession because, *inter alia*,

14   "[t]here is no evidence in the record which establishes that Washington would testify in

15   [petitioner's] trial.").  For the foregoing reasons, Petitioner is not entitled to habeas corpus relief

16   on his claim that trial counsel was ineffective for failing to investigate and present members of

17   Essco's cleaning crew as witnesses.

18   **IV.  Conclusion**

19           In view of the foregoing, the Petition for Writ of Habeas Corpus should be denied.

20   Accordingly,

21

22           **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas

23   Corpus (docket # 1) be **DENIED.**

24           This recommendation is not an order that is immediately appealable to the Ninth

25   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

26   Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

27   parties shall have ten days from the date of service of a copy of this recommendation within

28   which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72,

6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 27th day of April, 2009.


Lawrence O. Anderson
United States Magistrate Judge